FANNIE SHAMMAH and ABDALLAH SHAKER, as Administrators, etc., of NICHOLAS J. SABANEK, Deceased, Appellants, *v.* EMPIRE LINEN IMPORTING CORP. and NADEEN KALESH, Respondents.

First Department, June 19, 1940.

*Morris Shapiro* of counsel [*Jamil B. Holway* and *Herman Elkins* with him on the brief], for the appellants.

*Jacob Manheim*, for the respondents.

COHN, J. Plaintiffs' intestate, Nicholas J. Sabanek, during his lifetime and on March 19, 1936, entered into an agreement in writing with defendant Nadeen Kalesh for the purchase of an interest in the business of the corporate defendant Empire Linen Importing Corp. Nadeen Kalesh was then the owner of all the stock. Under the terms of the contract, Sabanek agreed to purchase half of the capital stock for $10,000; he also covenanted to loan the corporation $5,000, which loan was to be evidenced by a promissory note; he was to be elected treasurer and though he was not required to do any work, he and Kalesh were each to receive from the corporation $175 per month.

The 17th clause of the agreement reads as follows: " It is hereby agreed that in the event of the death of any one of the individual parties hereto during the life of the ' Company,' that in such event the survivor or surviving individual party hereto shall purchase of and pay to the legal representative of such deceased party the value of his shares of stock according to their book value as of the date of death of said deceased party, which shall be

determined within 60 days of the date of the death of such deceased party and the sum found to be due for such shares of stock shall be paid in four equal installments, to wit: three, six, nine and twelve months from the date of such decease."

The agreement was carried out by the parties except for the fact that after Sabanek died on November 6, 1938, Kalesh failed to purchase the stock of Sabanek as above stipulated. There also appeared to be due Sabanek's estate $1,000 on the corporate defendant's promissory note. This action was thereupon brought by the administrators of Sabanek's estate to recover the alleged balance of $1,000 on the note and the installments due under the stock purchase agreement. It is claimed by plaintiffs that on the date of Sabanek's death, the book value of his stock was $11,338.14, and that defendant Kalesh failed to pay for the stock as provided in paragraph 17th of the agreement.

In their answer to the complaint defendants interposed an affirmative defense to the effect that on February 19, 1937, the parties agreed to cancel and discharge the written contract and entered into a new oral understanding wherein Sabanek agreed to sell his stock to defendant Kalesh for $7,500 as of January 1, 1937; that the $7,500 was to be paid by the credit of $200 received by Sabanek as monthly drawings from the defendant corporation since January 1, 1937, and $100 monthly thereafter; that until the full sum was paid Sabanek was to occupy space in the corporate defendant's office and was to continue to act as treasurer with the right to sign checks. It is further alleged that, pursuant to the new arrangement, Sabanek delivered his shares of stock to defendant Kalesh, who accepted and still holds them, and that up to November 1, 1938, the defendant corporation paid to Sabanek the sum of $2,100 on account of the purchase price of the stock. Defendants also allege in the affirmative defense their willingness to continue payments of $100 monthly and refusal of plaintiffs to accept.

The proof in the case concerning the substituted agreement and the alleged sale of the stock by Sabanek was offered by defendant Kalesh, his brother, George Kalesh, the corporation's accountant, A. David Bernstein, Eleanor Makhoul, its bookkeeper, who was the *fiancée* of George Kalesh and Abraham Dolinsky, the attorney for the defendant corporation.

The substance of the testimony adduced by these witnesses is as follows: that when the accountant at the end of the year 1936 announced that the defendant corporation had lost $2,000, Sabanek expressed anxiety to sell his interest in the corporation; that he offered to take $4,000 in payment of the promissory note for $5,000,

the $1,000 reduction representing his share of the loss; that he agreed orally to sell his stock for $7,500; that he delivered the stock to Kalesh, (who still possesses it), with the understanding that he would not indorse it until the full $7,500 was paid; that Sabanek sold the stock as of January 1, 1937, and since he had received $200 from the corporation in the meantime, he credited that sum toward the purchase price.

Defendants' witnesses also stated that the understanding between Kalesh and Sabanek was that the latter was to continue as treasurer of the corporation; that he did thereafter hold that office and signed the corporation's checks as treasurer; that he was to be permitted to use the corporation's office and engage in the same business but solely for his own account; that Sabanek came into the office regularly as he had been accustomed to do. It is to be noted that these witnesses, with the possible exception of Bernstein, the accountant, were either financially interested in the result of the litigation or so related to defendant Kalesh as to require the closest possible scrutiny of their testimony concerning transactions with the deceased, whose lips are now sealed.

As against defendants' proof, there was produced the following documentary evidence: (1) A financial statement of the defendant corporation for the year 1936 showing that the defendant corporation had a loss not of $2,000 for that year but only of $400.33; (2) an income tax return of Sabanek, prepared by Bernstein, the defendant corporation's accountant, which shows that the deceased in the year 1937 had received from the defendant corporation $1,200 as salary; (3) reports of the defendant corporation prepared by its accountant, Bernstein, and filed pursuant to the Social Security Act setting forth that $1,200 had been paid in 1937 to Sabanek as wages and also showing the wages paid to the deceased in 1938; (4) the corporate defendant's books and income tax returns, all of which set forth that the payments made to Sabanek during 1937 and 1938 were for salary. Instead of receiving $100 per month for payment against the purchase price of the stock as stipulated in the purported oral agreement, Sabanek was paid only $99 monthly, one per cent being deducted for social security tax levied against these payments as *wages* or *salary*.

All this documentary evidence clearly refutes the testimony given by defendants' witnesses that the monthly payments to Sabanek were deemed to be installment payments on account of the price of the stock.

The conduct of Sabanek and the acts of the corporation were all wholly inconsistent with defendants' claim that the oral agreement alleged to have been made on February 19, 1937, to repur-

chase Sabanek's stock, had actually been consummated. After the date of the claimed novation, Sabanek, nevertheless, continued to act as treasurer; he still was vested with authority to sign the corporation's checks; he attended at the corporate defendant's offices regularly; he still remained in the same line of business; he continued to receive from the corporation $100 monthly less social security tax and he paid an income tax on the money thus received as salary. After February 19, 1937, the defendant corporation recorded the monthly payments to Sabanek on the books and official reports filed with governmental agencies just as it had done before the date when the alleged oral agreement had gone into effect and it permitted Sabanek to come and go as he had been wont to do when he was admittedly a half owner of the corporation. The fact that the stock was in defendant Kalesh's possession is not, in view of the situation, entitled to much weight since Sabanek's death was sudden and the stock certificate was not indorsed by Sabanek.

It is indeed strange that if the agreement which defendant Kalesh asserts had been made with Sabanek for the sale of the latter's stock, such understanding was not evidenced by a writing. According to defendants' witnesses, Sabanek and Kalesh had conferred with an attorney concerning the alleged transaction. This was the same attorney who had drawn the original agreement whereby Sabanek acquired his interest in the defendant corporation. It seems inconceivable that when the parties agreed to nullify the terms of the original written agreement, they could have determined that a writing was unnecessary to effect such a radical change. Particularly is this so, since their contemplated conduct was to negative any idea that an arrangement as claimed by defendant Kalesh had been made.

The verdict is manifestly contrary to the weight of the credible evidence. In the circumstances we cannot permit the judgment in defendants' favor to stand.

Judgment cannot be directed for plaintiffs, however, as the proof of the book value of the stock is unsatisfactory. The fact that the capital net worth of the defendant corporation on December 31, 1938, was $22,676.28 is not proof of the corporation's net worth on November 6, 1938, the date of Sabanek's death. The book value of the stock must be fixed as of the latter date. A new trial should, accordingly, be ordered as to the second cause of action set forth in the complaint, the first cause of action having been discontinued on consent.

The judgment should be reversed and a new trial ordered as to the second cause of action, with costs to the appellants to abide the event.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered as to the second cause of action set forth in the complaint, with costs to the appellants to abide the event. Settle order on notice.